## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MELVIN BAISDEN,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. No.** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **SHERIDAN NISSAN** | : | |
| | : | |
| **Defendant.** | : | |

### COMPLAINT

### PARTIES

1.    Plaintiff, Melvin Baisden, (hereinafter "Plaintiff" or "Mr. Baisden"), has at all times relevant to this Complaint been a resident of New Castle County, Delaware and currently resides at 1108 Anchorage Street, Wilmington, DE 19805.

2.    Defendant, Sheridan Nissan (hereinafter "Defendant" or "Sheridan"), is an entity doing business in the State of Delaware selling and servicing automobiles. It is subject to service through Joseph Sheridan, 4001 Kirkwood Highway, Wilmington, DE 19808.

### JURISDICTION

3.    Jurisdiction in this Court is founded on the existence of a question arising under federal statutes. Specifically, this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a) of Title VII of the Civil Rights Act and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal and state law which prohibits discrimination against employees because of their race. The state law claim regarding the ordinance violations is brought pursuant to the pendent jurisdiction of this Court.

## FACTUAL BACKGROUND

4.      Mr. Baisden is an African-American who began working for Sheridan in July 2004 as a salesman.

5.      From the beginning of his employment, there was a certain amount of turmoil that existed at the management level at Sheridan. For example, there was a high turnover of employees, drug issues, and sexual advances by employees towards customers. There was also a power struggle going on between the General Manager, Dan Hall and Manager Chris Blaylock.

6.      Eventually, Dan Hall was terminated and Chris Blaylock became the acting General Manager. It was at this point that Mr. Baisden began to be discriminated against because of his race.

### *The "Machine" Incident*

7.      At Sheridan, when a salesmen strikes a deal with a customer, he is required to go to a sales manager to get that manager's signature on the deal prior to proceeding to the used car building to have the customer's trade vehicle appraised.

8.      On Saturday November 27, 2004, Mr. Baisden struck a deal with a customer and proceeded to the sales tower for a sales manager's signature. While there, Allan McCormick, a Caucasian sales manager, began to question Mr. Baisden about his failure to show a customer "the machine" in the service department. Mr. Baisden had no knowledge about this "machine" and had never been shown the "machine" by anybody at Sheridan. He communicated this to Mr. McCormick and informed him that he was trained to walk the customer through the service department, explain the hours of service, etc. In his five months at Sheridan that is the way he had always performed his sales.

9.     Mr. McCormick became irate and began berating Mr. Baisden for not showing the customer the "machine." However, through all of this, he never showed Mr. Baisden the "machine" or explained what the "machine" did. He told Mr. Baisden that if Mr. Baisden had no receipt from the "machine," then he would get no signature to make the sale. Simply put, Mr. McCormick was refusing to permit Mr. Baisden to make that sale.

10.     Shortly thereafter, Mr. Baisden had another customer lined up for a deal. He still had no knowledge of what the machine did, or even where it was. Consequently, he did his normal routine of walking the customer through the service department – a routine all salesmen were required to do, but for which many did not.

11.     Because of his last experience with Mr. McCormick, Mr. Baisden did not go to him for the required signature. Instead he went to a sales manager named Mr. Yang Yang. Mr. Yang was present at the sales tower earlier and witnessed Mr. McCormick's actions regarding the "machine."

12.     Like Mr. McCormick, Mr. Yang also refused to sign. Mr. Baisden explained to him he was perfectly willing to learn about the "machine," but he had a customer right now ready to buy a car. If Mr. Yang would sign for the sale, Mr. Baisden promised he would inquire into getting trained on the "machine" as soon as possible. Mr. Yang steadfastly refused to sign.

13.     Mr. Baisden was bewildered by all of this. He had worked at Sheridan for five months selling cars and not once had he been made aware of this "machine" or the requirement that you show a customer the "machine" or you can't sell them a car. The "machine" was never mentioned During Mr. Baisden's training. Furthermore, he

communicated to other salesmen at the dealership on a daily basis regarding their jobs and job requirements, and never had another salesman even mentioned this "machine."

14.    Because he did not want to lose this sale, either for him or for the dealership, Mr. Baisden approached Chris Blaylock for the signature.  He explained everything to him about the "machine" and how he knew nothing about it, but how he had a sale waiting. Mr. Blaylock gave Mr. Baisden the signature.

15.    The following Monday, November 29, 2004, Mr. Baisden was leaving the dealership to go to lunch when Mr. Yang stopped him and informed him that he needed to have a talk with him.  The two proceeded into one of the finance offices where Mr. Yang gave Mr. Baisden two disciplinary letters.  Both letters listed insubordination as the violation.  Specifically, it stated that Mr. Baisden failed to show the customers the service department.  Conspicuously absent was any mention of the "machine."

16.    Mr. Baisden questioned why he was being written up for not showing his customers the service department when, in fact, he *had* shown them the service department. He also questioned Mr. Yang about the "machine".  Mr. Yang replied that Mr. Baisden should have taken it upon himself to learn about the machine, and in fact, in Mr. Yang's short tenure at Sheridan (Mr. Yang had been there for less time than Mr. Baisden) he had learned everything there was to know about the machine and how to operate it.

17.    Mr. Baisden was being discriminated against because other similarly-situated Caucasian salesmen had failed, both on November 27, 2004 and dates before and after November 27, 2004, to show their customers the machine *and*, unlike Mr. Baisden, would completely bypass the service department with their customers in completing a sale, but were not disciplined at all or disciplined much less severely.

4

18.    Mr. Yang then took Mr. Baisden and a new employee to meet with Customer Relations Manager, Phil Richardson, so that Mr. Richardson could train them on the machine.  When Mr. Baisden met with Mr. Richardson, Mr. Richardson stated, "I don't know why they made such a big deal about the damn machine.  Hell the damn thing never worked, hasn't worked in months, and isn't working now, so I can't train you on it."

19.    In amazement, Mr. Baisden informed Mr. Richardson that he had just received two disciplinary letters for not using this machine – *and the machine does not even work*.  As there was going to be no training, Mr. Baisden proceeded to take his, now delayed, lunch break.

20.    When he returned from lunch, Mr. Richardson approached Mr. Baisden and told him that he had just heard the whole story about what had happened on Saturday with the "machine" and he apologized for the dealership.  He said that as a manger, he had to admit that it was wrong for them to discipline Mr. Baisden for this.

21.    Because the "machine" was not working on November 27, 2004, it was impossible for other similarly-situated Caucasian employees to have used the "machine" on that day.  Moreover, because the "machine" had not worked in months, these similarly-situated Caucasian employees could not have used the "machine" in that time period.  However, these similarly-situated Caucasian employees were not punished, or were punished less severely, for their failure to use the "machine" as Mr. Baisden, an African-American, was punished.

22.    Interestingly, because the "machine" had not worked in the time period that Mr. Yang had been there, it would have been impossible for Mr.Yang to have

learned all there was to know all about the "machine" and how to operate it as he had claimed.

23.    Eventually the "machine" was fixed and an announcement was made that all were to use it. It is telling that it was an alleged requirement prior to this, yet the Sheridan felt it necessary to make an announcement that everybody was to now use the machine. It was also announced that any failure to use the machine would result in a $1.00 fine. A stark contrast from the punishment imposed on Mr. Baisden. Further, the sales force at the dealership is predominantly Caucasian. Therefore, this predominantly Caucasian sales force would thereafter receive a much less severe penalty for failing to utilize the machine than did Mr. Baisden, an African-American.

### *The Bellinzoni Incident*

24.    In December 2004, Sheridan put an advertisement in the newspaper for a finance manager and an assistant finance manager. Mr. Baisden applied for the positions.

25.    On December 11, 2004 Mr. Baisden and a number of other salesmen were outside of the dealership talking about the assistant finance manager's position. Specifically that it paid $35,000 per year. December is typically a very slow month for car sales and Mr. Baisden pointed out that the $35,000 salary would probably pay more during slow months than a salesman position during those months.

26.    At that point, a Caucasian salesman, Justin Bellinzoni, appeared and began dominating the conversation with respect to his knowledge of the subject. Mr. Baisden, knowing that Mr. Bellinzoni was a relative newcomer to the auto sales business, joked, "Doc, how long have you been in the car business." Mr. Baisden then stated that he's been in the business for years and that the winter months *are* in fact the slowest of the

6

year. The others in the group started laughing because Mr. Bellinzoni, who many believe, is somewhat of a know-it-all, had been put in his place.

27. Mr. Bellinzoni became very angry and told Mr. Baisden that if he called him Doc again, that he "would rip [his] fucking head off." Mr. Baisden responded that working hours were neither the time nor the place for this conversation, but if Mr. Bellinzoni would like to discuss it off hours he would be glad to oblige him. The others in the group began laughing harder.

28. Following this comment, Mr. Bellinzoni stormed into the dealership and went to talk to Mr. McCormick. A few minutes later, Mr. Baisden was called into Mr. McCormick's office. Also there was Chris Blaylock. When Mr. Baisden walked in, he was handed yet another disciplinary warning. However, when he looked at it, it did not pertain to what had just happened, it pertained to Mr. Baisden's "training session" on the machine from November 29 – almost *two weeks* prior.

29. The disciplinary notice stated that Mr. Baisden "walked out on duty, threatening to "flip out" after being given an action notice aggressive or mad." However, the only time Mr. Baisden left the dealership that day was to go to lunch, something he is permitted to do. Moreover, he even told Mr. Richardson that he was going to lunch.

30. Interestingly, this notice was not drafted by Phil Richardson, the only manager present when Mr. Baisden went to lunch that day; it was written by Chris Blaylock, who was not present. Additionally, the date of the incident was November 29, and Mr. Baisden was just learning of the disciplinary action almost two weeks later.

31. Mr. Baisden asked them if they knew about what happened outside with Mr. Bellinzoni and the threat that he made to Mr. Baisden. They acknowledged that they

did. He then asked why Mr. Bellinzoni was not being disciplined for the threat. Mr. McCormick and Mr. Blaylock did not respond.

32.    Mr. Baisden was formally disciplined for allegedly being angry or mad on the job. However, a similarly-situated Caucasian employee angrily made a physical threat to another employee and was not disciplined.

33.    At Sheridan, there is a term, "bone deal," which refers to easy sales that the managers pass off to salesmen. During this same conversation with Mr. Baisden, Mr. McCormick and Mr. Blaylock both told Mr. Baisden that if they had a "bone deal" to give away and both Mr. Bellinzoni and Mr. Baisden were standing there, they would give the "bone deal" to Mr. Bellinzoni and not Mr. Baisden. Again, Mr. Bellinzoni is Caucasian and Mr. Baisden is African-American.

34.    Finally, with respect to the finance manager and assistant finance manager positions that had been advertised in the paper, Mr. McCormick and Mr. Blaylock told Mr. Baisden that they would not consider him for either position even though he was more qualified than the finance manager that was currently there. Neither would give Mr. Baisden a reason why they would not consider him.

35.    Upon information and belief, Caucasians were hired to fill the positions.

36.    When Mr. Baisden left the meeting, it was evident to him that management at Sheridan was not going to do anything about Mr. Bellinzoni's threat. Therefore, Mr. Baisden filed a complaint with the Delaware State Police.

### *Stolen Sale*

37.    The next day, on December 12, 2004, Mr. Baisden had a customer, Juanita Summers, an African-American, who had agreed to buy a Nissan Titan pickup truck. All of the terms of the agreement, had been resolved except for the interest rate to be

8

charged. In essence, this deal was finished except for signing the papers. While they were seated, another salesman [name unknown at present], who happened to be Mr. Bellinzoni's roommate, came over and told Mr. Baisden that he needed the keys to the truck. Mr. Baisden informed him that his customer was about to purchase that particular truck.

38.    At this time, Mr. Blaylock came over and ordered the sales manager, who was seated at the table with the customer and Mr. Baisden working out the deal, to take the keys from Mr. Baisden and give them to the other salesman. All of this took place right in front of this customer. The customer was so insulted that she got up and walked out.

39.    Mr. Blaylock and the other salesman had, in essence, stolen a sale from Mr. Baisden, and incredibly, from Sheridan as well.

40.    When similarly-situated Caucasian salesmen at Sheridan are as close to closing a deal as was Mr. Baisden in this instance, the managers have never taken the keys away from that salesman so another can show the automobile to another customer.

41.    Mr. Baisden was terminated from Sheridan Nissan on January 3, 2005 allegedly due to his poor performance.

42.    Mr. Baisden filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 29, 2005.

43.    Mr. Baisden received a Notice of Right to Sue from the Equal Employment Opportunity Commission on February 7, 2006. (Attached hereto as exhibit A.)

**COUNT I**
**Title VII - Racial Discrimination**

9

44.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 43 of this Complaint by reference as though fully set forth at length herein.

45.    The practices of Defendant as complained of above, had the effect of depriving Plaintiff of equal employment opportunities and otherwise affected his employment because of his race. The practices employed by Defendant were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

46.    The practices of Defendant as complained of above, caused Plaintiff to experience conscious pain and suffering and other emotional harm.

47.    The practices of Defendant as described above are imputable to Defendant in violation of 42 U.S.C. §2000(e)-2(a) and 3(a).

48.    As a direct and proximate result of said acts of Defendant, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to his reputation.

49.    Defendant's discrimination was willful, wanton and malicious.  As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

## SECOND CAUSE OF ACTION
### Title VII Racial Discrimination - Failure to Promote

50.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 49 of this Complaint by reference as though fully set forth at length herein.

51.    Defendant denied the opportunity for career advancement despite his qualifications and aptitude.

52.    Defendant denied Plaintiff career advancement opportunities by denying him a promotion to finance manager or assistant finance manager despite admitting that he would be a better fit than their current finance manager.

53.    As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, a loss of considerable pay: past, present, future and prospective, and has suffered, and continues to suffer, humiliation, mental anguish, and emotional pain.

54.    Defendant's discrimination was willful, wanton and malicious.    As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

### THIRD CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1981)

55.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 54 of this Complaint by reference as though fully set forth at length herein.

56.    Defendant has intentionally discriminated against Plaintiff on account of his race in violation of 42 U.S.C. § 1981 by denying him equal terms and conditions of employment and refusing to promote Plaintiff to a finance manager and assistant finance manager.

57.    As a direct and proximate result of said acts, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to his reputation.

### FOURTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

58.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 57 of this Complaint by reference as though fully set forth at length herein.

11

59.    The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

60.    Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by failing to promote him and by discriminating against him based upon his race.

61.    Defendant's discrimination was willful, wanton, and malicious.    As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

62.    The above-stated damages were not the result of any act or omission on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)    Issue a judgment against the Defendant, Sheridan Nissan, and in his favor to provide appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(b)    Issue a judgment against the Defendant, Sheridan Nissan, and in his favor ordering Defendant to provide compensation for non-pecuniary losses, including pain, suffering, and humiliation in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(c)    Issue a judgment against Defendant, Sheridan Nissan, and in his favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(d)     Issue a judgment against Defendant, Sheridan Nissan, and in his favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(e)     Issue a judgment against Defendant, Sheridan Nissan, and in his favor ordering Defendant to pay the costs of reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 2000e-5(f)(1) and (3); and

(f)     Issue a judgment against Defendant, Sheridan Nissan, and in his favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), compensatory damages, punitive damages, attorneys' fees, the cost of this litigation, pre- and post-judgment interest and such other further relief as this Honorable Court deems just and proper.

MARGOLIS EDELSTEIN

Timothy J. Wilson, Esquire (DE #4323)
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680 – telephone
(302) 777-4682 – fax
*Attorneys for Plaintiff*

DATED:  May 8, 2006

13



EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Melvin Baisden
    1108 Anchorage Street
    Wilmington, DE 19805

From: Equal Employment Opportunity Commission
      Philadelphia District Office
      The Bourse
      21 S. Fifth Street, Suite 400
      Philadelphia, PA 19106-2515

[  ]   *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-00755 | Legal Unit | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)* _____

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Mary M. Tomasso

Marie M. Tomasso, District Director

February 7, 2006

*(Date Mailed)*

Enclosure(s)

cc:   Sheridan Nissan
      Elizabeth Walker, Esquire (For Respondent)

EXHIBIT

A

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --**    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit before 7/1/98 -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
MELVIN BAISDEN

### DEFENDANTS
SHERIDAN NISSAN

**(b)** County of Residence of First Listed Plaintiff   New Castle County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New Castle County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
TIMOTHY J. WILSON
MARGOLIS EDELSTEIN, 1509 GILPIN AVE
WILMINGTON, DE  19806    777-4680

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
         Plaintiff

☒ 3   Federal Question
         (U.S. Government Not a Party)

☐ 2   U.S. Government
         Defendant

☐ 4   Diversity
         (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
42 USC §2000(e); 42 U.S.C. §704(a); AND 42 U.S.C §1981
Brief description of cause:
EMPLOYMENT DISCRIMINATION BASED ON RACE

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
05/08/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE